v. INCORPORATED, MR. CASTANIDAS. Thank you, Judge Newman, and may it please the Court. This case involves two of the fundamental precepts of patent law, disclosure and definition. With regard to disclosure, it's clear that the claims in suit depend principally on a measurement known as KM in this patent, or a mechanical spring constant. Now, with regard to the best mode argument, what we know from this record is that the inventors had a preferred embodiment. That preferred embodiment had a KM of 600 newtons per meter with a mass of 20.3 and yet the District Court denied our motion for JMAL with regard to the best mode defense. That's straightforwardly. That information was not disclosed and it deprived the public of critical information needed to practice this patent, particularly with regard to its preferred embodiment. But moving on to the indefiniteness problem, the absence of any KM and the substitution of language of representative of a desired mechanical characteristic or a desired characteristic renders these claims invalid for indefiniteness. You can't know from reading this patent what a desired characteristic is, and even the District Judge at page 849 said that the desired characteristic is whatever the artisan practicing the patent decides to desire as the indefiniteness. Now, I don't have a whole lot to add with regard to those two because either of them... But this was a jury trial. It was a jury trial, yes. Why the critical standard for sustaining a jury verdict was not met. Sure, Judge Newman. With regard to best mode, the evidence is out of the inventor's mouth and it's undisputed. And in cases like the Court's recent decision in Wellman v. Eastman Chemical, that is really the only way you ever know what the subjective best mode apprehended by the inventors is. That is what they say at page... If I can give you the site to that, it's A9545, and with regard to the particular mask that was used, that's at A9558. There's no dispute with regard to that. What there is, is an erroneous legal argument that was used by ION and adopted by the District Court to sustain this verdict, which was that the inventors thought that other modes might work as well. But that doesn't answer the question of whether this was their preferred embodiment. And if there's any doubt whatsoever about whether this was a preferred embodiment, you need only look at the fact that they call this their optimized result. This embodiment with the 600 newtons per meter and the 20.3 milligram mass was called their effective, perfect, or useful as possible, or to make the best of. This was their best mode. It's conceded that it wasn't disclosed. With regard to best mode, that's the end of the case. With regard to indefiniteness, this Court's decision in Datomize should answer all of the questions with regard to the absence of any reasonable construction of this term that can give the public notice of what practices the patent. Well, all we know from the construction that was given by the District Court was that the desired characteristic is a characteristic relating to the responsiveness of the system that may be affected or manipulated by the springs or beams. Well, pretty much every characteristic of the system is affected or manipulated by the springs or beams. And on top of that, you'll notice that that definition doesn't tell us at all what's desired. Now, I mentioned the Datomize decision earlier. In Datomize, this Court was faced with claim language that said, a desired, uniform, and aesthetically pleasing look. The argument was made in prosecution and addressed by this Court in Datomize that the aesthetically pleasing look was not some sort of subjective standard, but it was whatever the artisan desired it to look like. And this Court pretty emphatically rejected that argument and said that even that sort of language is not going to provide the definition necessary. And we're talking about the same words, desired, that are in this claim as well. Now, let me turn very quickly to the claim construction issue because at that point I will sit down and relinquish the podium for the cross-appeal. With regard to direction opposite, there are two issues that I want to address. First is the waiver in this case. And then there's the actual merits of whether or not this should have been construed and whether our construction is right. Did you appeal or argue that this particular element is indefinite? Did we argue that this particular element is indefinite? I believe that we offered a construction and said that what we had here that modifies the direction opposite was the said electromagnetic feedback force being characterized for small amplitudes of said displacement signal. The whole phrase is what modifies the mechanical spring force. And ultimately the noun that you go back to is the feedback force, but I don't think... But if I were to decide I don't think your construction makes sense, and if I were to decide I don't think their construction makes sense because a spring constant doesn't have direction, what am I left to do on appeal if as an appellate court I don't like either construction? I'm finding it very difficult to construe. What happens? I certainly find it difficult to construe as well, and with regard to that you have two choices. The court could certainly, having given notice to the other side, rule it indefinite, but I think the better way to do that is just to use all athletical... It doesn't make me very comfortable. Doesn't make me very comfortable either, and so the other option is athletic alternatives. And that is that if you've tried this construction and you're still left with one or the other, you give the one that is most in accord with the public notice function of the patent, and that's ours. Because we know, and they don't dispute, that the district court had already ruled in this case that a constant doesn't have a direction. And just so we're clear with regard to the waiver argument that's made against us, you will recall that in the magistrate judge's ruling, which was adopted by the district court, she ruled that a constant didn't have a direction, and the district court reaffirmed that in a later opinion. It was only at trial when the expert, Mr. Buckman, decided or started going in a different direction, so to speak, with regard to what was in a direction opposite that we objected, and we objected immediately at that point. And I think this has parallels to this court's recent decision in creative advertising, where a similar issue came up during trial. The district court construed one aspect of the claim but refused to construe the other aspect of the claim. That was held to be a violation of this court's decision in O2 micro. Now ultimately in this case, Judge Moore, I think you can resolve the case very simply. If you say that you can't decide whether it's a constant, which doesn't have a direction that modifies direction opposite, or it's that force that is in the direction opposite of that other force, then athletic alternatives breaks the tie for us, and we win, and that should take care of all the questions. But nothing in the patent supports the idea that the electromagnetic force would be the direction opposite of the mechanical spring force. At this point in the claim, you're trying to get the ball back into the center. So you're trying to get this thing back to the center. That's the direction the spring is pointing. It's also the direction of the feedback force operating. So if you were pointing in an opposite direction, the entire objective of this element of the claim wouldn't be met. That's why I don't like your construction. You know why I don't like theirs, because the constant doesn't have a direction. I think the problem with their construction on this can be seen in the prosecution history. When you look at the way they distinguished PAC, they clearly said that the force has to be in a direction opposite, and it's because that they are, in fact, they say amusingly enough in the of what their proper construction of their claim is. You say that you don't like ours, but really your argument in response to mine is not that the claim isn't clear that the force opposes another force. Yours is that this doesn't work. It's not operable. And that seems to me to be a separate problem. Maybe it's a problem of enablement, which isn't on this record. But what we have here is we have plain claim language. And in the patent, by the way, we do have clear evidence that forces oppose other forces. And in fact, if you look, for example, at the top of column three, line seven to ten, you see they use the term restoring force here. Such restoring force is in a direction opposite that of the mechanical spring force. So there is support in the patent document. But that's at a different stage in the process. That's the sensing stage, as opposed to the forcing stage. You know, I don't know that that's at all clear. I believe that's column three is in summary of the invention portion of the patent. I don't think that's... It says here at the top, the connecting arrangement provides a mechanical spring force which opposes movement of the mass. The apparatus includes an arrangement to generate a displacement signal as a function of time, which is representative of the distance the mass has moved with respect to the support structure in response to force applied to the sensor. An electromagnetic restoring force in response to the displacement signal is applied to the mass. Such restoring force is in a direction opposite that of the mechanical spring force. So I think that's after the sensing force, and that's exactly the point in the claim that this is talking about. There's other evidence in the claims as well that says that forces oppose other forces. PAC is absolutely clear with regard to the distinction they made over PAC, that you're talking about direction opposite is the force, not the constant. And finally, as a matter of grammar and common sense, forces oppose other forces, constants don't have a direction. I'll preserve the remainder of my time unless the court has any further questions for rebuttal and my response to their prosecution. Okay, thank you, Mr. Castellanos. Mr. Reeves. Good morning. May it please the court, Matt Reeves for ION. Let me just address a few points here. First off, as to the best mode issue, we feel that a lot of the statements that are attributed to the testimony of inventors that appear in Sir Sal's brief really overstate the record. When you go back and see what the inventors actually said about what they subjectively believed at the time, they never had any subjective preference of this 600 newton per meter value. It was just a value that they happened to use. And the state, for example, ION or Sir Sal states in his brief that Mr. Mayo testified that it was of critical importance. Well, if you go back and you read the testimony, it just simply isn't what he said. So we think there was plenty of evidence here that a reasonable jury could have concluded there was no best violation and the court's rulings on that should be firm. Let me turn now to the issue that was just being discussed, which may be where most of the ink has been spilled in this case, and that is direction opposite. And one of the things that I'd like to say is two things. First, as to what really happened at trial, I want to see if I can set the record straight. At the Markman stage, the issue involved here is the construction of a clause that says electric spring constant, which is in a direction opposite the mechanical feedback force. At the Markman stage of the hearing, of the proceedings, both parties took the position that direction opposite modified the words electric spring constant. ION took that position and Sir Sal took that position and even said in footnote 55 of the Markman brief that direction opposite modified the electric spring constant. So that's the plain language of this claim. For better or worse, that's what the claim says and everybody agreed and Sir Sal even represented that to the district court. Fast forward to the expert reports now, and in the expert reports, both experts took the same position, that direction opposite modified electric spring constant. Not just ION's expert, but Sir Sal's expert, Dr. Nykerk as well. The first time that anyone ever raised the notion that direction opposite modified electromagnetic feedback force was when Sir Sal raised it at the close of Dr. Buckman's testimony. And at that point, Sir Sal represented to the district court that they were surprised by Dr. Buckman's testimony and that they raised the issue as soon as they heard the words come out of his mouth. But that just doesn't jive with the facts and the court noted that in his order, because he was asked to provide further Markman construction by the parties, and he noted that both parties were well aware long before then of the panels of the construction that claim and their relative positions. And that's important to the issue of waiver in this case, because despite Sir Sal's representations now, the representations they make in their brief, it looks like this was clearly a design's trial tactic and it should not succeed. Now let me get back to the question that I heard Judge Moore ask, which was, is the issue of indefiniteness on this particular issue preserved? And the answer to that is, no, it's not. Sir Sal hinted at that in their Markman brief, but then never took any steps to challenge this claim on indefiniteness on that basis. So that shift has sailed and is not before the court here. Now as far as the remaining issue, which is Sir Sal's construction as to what this term should be, the fact is it makes perfect sense to say an electric spring constant in a direction opposite mechanical feedback force. And the reason it makes perfect sense is you have to read this patent through the eyes of a person of ordinary skill in the art. The thing that Sir Sal has said all along is effectively that when the force, the electromagnetic feedback force, is cooperating with the mechanical feedback force, it is strengthening the mechanical spring constant. And if the force were against the mechanical feedback force, it would be essentially softening the springs. But that's not true. The force always works in the same direction as the mechanical feedback force. But yet it can soften or weaken the springs or stiffen the springs depending on how the electromagnetic feedback force is designed. Now that may not be intuitive, but it's a fact. And it has to do with when this patent talks about electromagnetic feedback force and electric springs and electric spring constants, it's really talking about a mathematical abstraction. If you read the patent, you already know that it's very math heavy. And what's going on here is we have... Do you think a force in the direction opposite could soften the spring? It doesn't make sense to me. A force in the direction opposite? Electromagnetic force in the direction opposite doesn't seem to me could soften the spring. It could only harden them. That is... I thought I heard you say the opposite, but maybe you misspoke or maybe I misheard. Well, maybe I misspoke. I believe that that is for Sal's construction. They say that if the electromagnetic feedback force is in the same direction as the mechanical feedback force, then it's acting to stiffen the springs. And if the electromagnetic force is in a direction opposite the mechanical feedback force, it's acting to soften the springs. That is how Sir Sal describes the technology in his brief. And Ion disputes that description of the technology. The electromagnetic feedback force is always acting with the mechanical feedback force to return the mass to its center position. But when you abstract, when you say electromagnetic feedback force, what you're talking about is the mathematical abstraction, the equation that represents the electromagnetic feedback force. That's what's being described throughout all the math that you see in that specification. The difficult part of your construction is that a spring constant doesn't have a direction. It's a constant, it's a number, it's a multiplier. It doesn't have a direction. So how can the spring constant be in a direction opposite the force that the spring constant represents a part of or is a multiplier of, could be in a different direction. But how can a constant be in a different direction than a force? Because when you read electric spring constant in the claims, not just any spring constant, electric spring constant, it is a reference to one of the mathematical terms in the whole electromagnetic feedback force. Sure, it's a number. Is it Km, am I remembering that right? Km and Ks. But that's a number. That's a number, right? So it's not a force. It's a number. Numbers can't have direction. But they can have signs. They can have algebraic signs. And when you say you're applying the electromagnetic force to this system, and you're combining this equation that represents the electromagnetic force, understanding that what it is, is a series of mathematical terms, a Taylor expansion, but you know, we don't need to know that name. It's a series of mathematical terms. One of those terms is called the electric spring and the electric constant in front of it as well. It's an electric spring constant. It's one of the terms in the series of terms that make up the electromagnetic feedback force. The mechanical feedback force is similarly described as an expansion of forces. So when you combine these terms mathematically, if they're positive, they're additive. If they're negative, you have one that's negative, obviously it will be subtracted from the other term that represents the mechanical feedback force. So it makes sense to say electric spring feedback, I'm sorry, electric spring constant in a direction opposite the mechanical feedback force. It would be understood by a person of skill in the art, reading this specification, that what you're talking about is combining these two abstractions, these two mathematical equations, and what you're doing is you're taking the... Well, the problem is the constant's not an equation. It's a single variable. It's a single number. The equation is the force that the constant is a part of. The equation is not the constant. The equation is not the constant. And so the negative number in the equation that you're subtracting away, that's two forces you're comparing to each other. But this claim requires us to compare a constant and a force. Right. And I'm saying that that would be understood by a person of ordinary skill in the art. That's the key. They would appreciate that. They would understand that when you say constant, you really mean the equation that represents force. They would think that you mean the term that corresponds to the electric feedback or the electric spring in the equation. Well, electric spring is something different than the constant, electric spring constant. So are you saying one of skill in the art would understand the term electric spring constant to equate to that equation that you told me about, which is not the equation. They would understand it to equate to a term of that equation, yes. A term, just a single variable k. Well, one of the terms in the equation. But the problem with that is in the spec you quite clearly define the spring constant as being k, not one of the terms, not one whole equation, but rather a single variable. But now you want to use the minus sign from the whole equation. It just doesn't work out for me. I'm struggling. I don't think constant can have direction opposite. And the way that you're trying to get there is by using the whole equation, which would make sense. It's just the equation is not what you defined in the spec as the constant. Well, the constant... You didn't draft this, right, this patent? I did not draft it. No, Your Honor. If I did, we wouldn't be here. We'd have already run. I have no doubt. But I know it's a little bit difficult to grasp, and it was hard for me to grasp. But what you have to understand is that when the specification and the claims say things like electromagnetic feedback force and electric spring constant, it's talking about these maybe in idiosyncratic sense, but that doesn't make it indefinite. It may not have been used in the exact sense that Webster's Merriam Dictionary would have defined it, but that doesn't matter. The question is, would it be understood by a person of skill in the art? And when you read it in the context of the claims itself, you can see they're subtracting the k-e from the k-m. Do you think that the district court did in fact construe this, or do you think he gave it to the The district court construed it. He did his job. There is no O2 violation here. There was one issue that was before the district court after Dr. Buckman's testimony, and that issue was very similar. What term is modified by the words direction opposite? Does direction opposite modify electric spring constant, or does it modify electromagnetic feedback force? You go back and you look at the court's ruling on that. He says very plainly that it does not modify electromagnetic feedback force. He didn't say it in quite so many words, but essentially he understood the issue. Ion was advancing the position that it modified electric spring constant. So cell was advancing the proposition that it modified electromagnetic feedback force, and the court said I'm not going to give the jury the construction that CERCEL is requesting because it contradicts the plain meaning of the claims. You can't read that opinion and wonder if the judge decided the issue. He did. So there is no O2 violation here. I know we've exhausted your time. Do you want to take a couple of minutes on the cross-appeal? Yes, yes I would, I'm sorry. Do you want to argue the cross-appeal or let it rest on the briefs? Oh, well let me argue the cross-appeal, I thought. Let me refer to the issue. What I want to address is the issue, the so-called foreign sales issue. Okay, would you need to be speedy? Okay, I'll be quick. On the foreign sales issue, basically we feel the court erred by taking away the jury verdict as to the so-called foreign sales. We believe there was sufficient evidence for a reasonable jury to find that a sale, in fact, occurred in the United States. And the reason we say that is because in Transocean, the court was clear that a sale is not limited to the transfer of tangible property. A sale may also be the agreement by which such a transfer takes place. That's Transocean at page 1311. And that is consistent with the holdings that are cited by Transocean and by Light Tubes, which all of them, the one thing they all have in common is when we're talking about the situs of the sale. Where did the sale take place? There's two things you can look at, two categories of evidence, if you will. One category is where the physical transfer of property took place. Where was the buyer? Where was the seller? Where did the property get shipped? All right, the other thing you can look at, of course, is what North American calls the formal terms of the sale. Where was it negotiated? Where was the contract signed? Where was payment received? Things like that. Now, in this case, there's no doubt that the sale took place outside the U.S. It was built in France, it was shipped to Venezuela, Brazil, and Canada. So those facts, ION doesn't dispute, would certainly favor CERCEL. But those weren't the only facts. There were other facts that the sale was negotiated and contracted for and payment received in U.S. dollars in Houston, Texas. Those go to the agreement, those go to the agreement. So the jury had evidence it could consider and decide either way. And it decided for ION. What the district court did was it simply said, well, the formal terms don't control. And then it disregarded them and made the decision based only on where the tangible property was transferred. And we believe that was error, that under the plain holding of Transocean, North American Phillips, and Lightcubes, that you have to consider all the evidence. You can't simply say, well, I'm going to disregard the formal terms side of the equation. And that's what the district court did, that was error. When you go back and ask yourself the question, did the jury have sufficient evidence to decide the issue for ION, taking into consideration... Is that the right question? You asked whether the district judge was correct in remitting the damages. We believe the judge was incorrect. No. When you said you go back and see if there was evidence to support the jury verdict, the district judge thought not. The district judge... And decided as presumably a question of law. That's correct. And he thought not because he disregarded the evidence of the formal terms, where the contract was He did not consider that. He simply disregarded it. If you consider that, then you realize there is sufficient evidence for the jury to find that a sale did take place in the U.S. and find, as it did, for ION. Okay. Thank you. Okay, let's see. I think the full rebuttal time, and you can use it as you wish. Thank you, Judge Newman. First, with regard to best mode, we've been accused of overstating the record. We've not just included summaries of the testimony, but we have actually quoted it, block quoted it in our brief. It's quite clear that they had a single optimized embodiment, 600 newtons per meter, with a 20.3 milligram mass. That wasn't disclosed. It didn't give the public any definition to the claim. With regard to indefiniteness, my friend on the other side didn't offer any response to our argument on indefiniteness. There's nothing for me to add at this point. With regard to claim construction, Judge Moore, in response to your question, my friend over here said that the judge had, in fact, construed the claim. I think the record tells a very different story. And let me just point you to three parts of the record, all of which appeared on January 26th. The first, of course, was Dr. Buckman's testimony. And he gets, and this is at page A10162, he gets the question, and is it your testimony today that even though the feedback force only acts in the same direction as the springs, and this is in the accused's device, that nonetheless there's some force in the surcell that acts in an opposite direction of the mechanical spring force? His answer is, I didn't testify and it's not my opinion, that there is a force in the surcell, in the surcell DSU, that acts in a direction opposite the mechanical spring force. It's not a force that's in a direction opposite the mechanical spring force. It's, as is said in the claim, an electric spring constant which is in a direction opposite of a mechanical spring force. So there you have Dr. Buckman on January 26th, 2010, testifying that the constant, the electric spring constant, is in a direction opposite. Then, when the court invites briefing on this issue, surcell says in its paper at A5207, Dr. Buckman's current testimony that the electrical spring constant is a quantity that has no direction, is consistent with and indeed mandated by the court's own claim construction of this term. So they've just contradicted Dr. Buckman here. And ultimately they induce Judge Folsom to make the ruling that appears at A11922 that says the court's claim construction discussed and rejected plaintiff's argument that a spring constant has a direction. So there you have the judge saying very clearly a constant doesn't have a direction, notwithstanding what Dr. Buckman said. And yes, he denied all of our motions and in a page that unfortunately did not make it into the joint appendix, but would be in the appendix at page 10738, and we can supply that to the court if it would be easier for you. We requested that after he denied all of our motions that he at least charge the jury that a spring constant has no direction. Judge Folsom's response, all those motions are denied. So the jury never heard that an electric spring constant has no direction. That's how we got here. And if this discussion proves anything, it proves that this is a claim construction issue that, like in creative internet technologies, should have been decided by the court and not left to the jury, and left for my friends on the other side to argue to the jury about what claim construction makes sense in this case. Now, with regard to the argument about algebraic signs on direction opposite, there's nothing in the specification that supports the notion that direction opposite refers to an algebraic sign. Quite the contrary, when the patentee wanted to talk about the subtraction action, he used the term, they used the term, difference. You'll see that in the specification that when you're talking about a subtraction relationship, like it's now said to be the direction opposite, that's the term they use. Direction opposite is talking only in the specification about forces. The reason that these concepts are hard to grasp, your honor, is that these claims are indebted. Now finally, with regard to the foreign sales issue, this case, as we've said in our briefs, is the mirror image of the Transocean decision. Everything that happened in the foreign countries in Transocean happened domestically here. Everything that happened domestically here in Transocean happened in the foreign countries. The performance and delivery in this contract was taking place entirely outside the United States. If you rule in ION's favor in this case, it's a serious problem of an affront to international comity and the possibility of double recovery because there would be infringement claims in all of those countries that my friend just named in the cross-appeal argument. Sue in Canada, sue in all of these other countries as well for the same sort of patent infringement, assuming that they have a parallel patent, of course. And that's not what the extraterritoriality limit on U.S. patent laws meant to do. Well, that would be true, wouldn't it, even if they manufactured the product abroad and then sold it into the United States. There could be duplicative litigation in the way of a suit in the place they manufactured it under the parallel patent and a suit in the United States for... Right, you could have that. It seems to me it would happen in a lot of cases that might involve an overlap in foreign and domestic and that's not a reason. You could have that. The damages would probably be substantially different and substantially less for anything that happened abroad. But here's the ultimate point, Judge Moore, with regard to why there's no sale within the meaning of 271G or 271A for that matter in this case. But there's no question that the sale took place in the United States. No, because that's the ultimate conclusion, Judge Newman, that you'd have to reach with regard to the statute. What took place were some negotiating activities and the delivery of a check. But, in fact, the parties that were negotiating, Sir Cell Inc., the defendant in this case, was not even the seller in those cases. The record says the sales contract was consummated. Right, and that's where Transocean has rejected that notion that the formal location of the negotiation and the consummation of the sale is what matters for purposes of the patent laws. If you think about it, Judge Newman, with regard to the device or the method that is claimed by this patent, what's the injury in the United States that happened here? The statute says make use or sell. Within the United States? Yes. And this is not applying Transocean and applying the plain language of the statute. This is not a sale within the United States. It's a sale to Canada. It's a sale to these other countries. You're saying it was made and used and sold in foreign countries? Correct. Correct. And the only issue in this case is sell. There's no claim of making or using here. You've been indulgent with our time. Thank you very much. I appreciate it. I think, Mr. Reeves, you can have half a minute of your rebuttal if you can talk fast. Well, in half a minute, Your Honor, about all I can say is that first off, Dr. Buckman didn't contradict himself. If you look back, he was referring to the plain language. That doesn't sound like the cross appeal. Oh, I'm sorry. Only on the cross appeal. Transocean. Transocean. My apologies. Transocean did not reject that you could consider evidence of where the formal part of the sales transaction took place. It did not reject that. In fact, it says you can consider it. And the district court should have considered it here. It said it didn't control. And ION is not claiming that that controls. It's just saying it must be considered. And here, if you consider it, it was evidence. It was sufficient evidence for the jury to find fraud. Okay. Got it. Thank you, Mr. Casades, Mr. Reeves. Case is taken on submission.